IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM E. KANTZ, JR., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:17-cv-00051 |
| | ) | |
| BANK OF AMERICA, N.A., | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE NEWBERN |
|     Defendant. | ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are Plaintiff's Motion For Summary Judgment (Doc. No. 52); Defendant's Cross Motion For Summary Judgment (Doc. No. 56); Plaintiff's Reply (Doc. Nos. 74, 76); and Defendant's Reply (Doc. No. 80). For the reasons set forth below, Plaintiff's Motion For Summary Judgment (Doc. No. 52) is **DENIED**, Defendant's Cross Motion For Summary Judgment (Doc. No. 56) is **GRANTED,** and this action is **DISMISSED**.

### II. Factual and Procedural Background

In the Amended Verified Complaint, filed in this case on March 16, 2017, Plaintiff William E. Kantz, Jr. alleges that Defendant Bank of America ("BOA") is liable for $25,000 and other relief for failing to provide him with certain information required by the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"). (Doc. No. 21). The claims in this case arise out of a Note and Deed of Trust entered into by Plaintiff and Sandra Lee with Defendant, on December 20, 2007, and secured by the residence located at 1244 Mary Helen Drive, Nashville, Tennessee. (Doc. No. 21, at ¶¶ 1-3; Exhibit A). Plaintiff alleges that Defendant foreclosed on the property in early 2014, and that the ensuing three foreclosure sales

were fraudulent and fake. (Doc. No. 21, at ¶ 4). In a separate action, Plaintiff challenged the foreclosure sales, and on March 30, 2017, the Sixth Circuit Court of Appeals issued an opinion affirming the district court's rejection of the challenge. (Doc. No. 90 in Case No. 3:14cv01113). Plaintiff alleges that he still resides at the address. (Doc. No. 21, at ¶ 1).

In the meantime, on August 17, 2015, the Federal Home Loan Mortgage Corporation filed an unlawful detainer action against Plaintiff seeking possession of the property at 1244 Mary Helen Drive, and Plaintiff removed the case to federal court. (Doc. No. 1 in Case No. 3:15cv00932). In that case, Plaintiff raised additional claims, including claims for violations of RESPA, TILA, the Fair Debt Collection Practices Act, and a claim for declaratory judgment that the foreclosure sale was unlawful. (Doc. No. 9 in Case No. 3:15cv00932). Plaintiff's claims have been dismissed (Doc. No. 240 in Case No. 3:15cv00932).

In this action, Plaintiff raises claims against Defendant for violation of TILA, specifically 15 U.S.C. § 1639g, by failing to provide him with information regarding the payoff amount of his loan. (Doc. No. 21). Plaintiff alleges that, on November 8, 2016, during a case management conference held in the case referenced above (3:15cv00932), counsel for Defendant indicated that BOA was the servicer of Plaintiff's loan. (*Id.*, at ¶ 12). Plaintiff further alleges that, on November 9, 2016, his attorney sent a letter, which he characterizes as a "Qualified Written Request," to counsel for Defendant.[1] (*Id.,* at ¶¶ 12-15). Through the letter, Plaintiff's counsel requests 20 categories of information under the heading: "R.E.S.P.A. Qualified Written Request," and the identity of the mortgage owner or servicer under the heading: "Truth-In-

---

[1]  The involvement of Plaintiff's counsel in the events that give rise to this action raise serious concerns about his role as counsel and as a fact witness at trial. However, given the Court's ruling, these concerns are moot.

Lending Act § 131(f)(2)." (Doc. No. 21-3). These requests were duplicated in an email from Plaintiff's counsel to Defendant's counsel sent that same day. (Doc. No. 21-4). Item #14 in the RESPA section requests "[a]n itemized statement of the current amount needed to pay-off the loan in full." (*Id.*) Plaintiff alleges that counsel for Defendant responded to the request in a letter to Plaintiff's counsel, dated December 8, 2016, notifying him of the need for additional time to complete the necessary research and stating that a response would be sent when the research was completed. (Doc. No. 21-5).

Plaintiff further alleges that on January 25, 2017, counsel for Plaintiff sent another letter, which he characterizes as a "Qualified Written Request," to Defendant at a P.O. Box in Wilmington, Delaware. (Doc. No. 21-6). This letter appears to be substantially similar to the letters sent to counsel for the Defendant. Plaintiff alleges that, notwithstanding its receipt of the letter, Defendant has failed to provide the requested information. (Doc. No. 21, at ¶¶ 21-24).

Through the summary judgment briefing, however, the parties appear to agree that Defendant sent Plaintiff a letter on February 11, 2017, stating that it was researching the January 25, 2017 request for information. (Doc. No. 75, at ¶ 4; Doc. No. 56-2). On February 21, 2017, Defendant sent a letter to Plaintiff's counsel stating that Defendant had received the January 25, 2017 request for information on February 3, 2017, but the request "did not include written authorization from [Plaintiff], for us to release loan information to you on his behalf, nor do we have existing authorization on file." (Doc. No. 56-3). The letter suggested that counsel fax the authorization, and indicated that Defendant would not be able to respond to the inquiries if the authorization was not received by February 24, 2017. (*Id.*)

In a letter to Defendant dated February 22, 2017, Plaintiff's counsel stated that an authorization was unnecessary and that Defendant's failure to respond violated TILA. (Doc. No.

56-4). The letter also repeated the requests for information listed in the earlier letters. (*Id.*) On February 27, 2018, Defendant sent a letter to Plaintiff indicating that it had not received an authorization for the release of information to his attorney, and consequently, it would be unable to respond to the inquiries. (Doc. No. 56-5). On March 10, 2017, counsel for Defendant sent a Third Party Authorization Form, via email, to counsel for Plaintiff and explained that Plaintiff would be required to complete the form before Defendant could discuss Plaintiff's account with counsel. (Doc. No. 56-6). Among other statements in his email response on March 13, 2017, Plaintiff's counsel insisted that an authorization form was unnecessary, argued that the form provided by Defendant's counsel was not appropriate, and asked for legal authority supporting the request for a third party authorization form. (Doc. No. 56-7).

It is undisputed that, to date, Plaintiff has not provided an authorization form to Defendant. Nevertheless, on June 1, 2017, Defendant's corporate designate provided Plaintiff with the requested payoff information as part of the discovery in this case. (Plaintiff's Memorandum Of Law In Support Of Motion For Summary Judgment (Doc. No. 53, at 2)).

## III. <u>Analysis</u>

### A. <u>The Standards Governing Motions For Summary Judgment</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has construed Rule 56 to "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.* Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

4

In considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Shreve v. Franklin County, Ohio,* 743 F.3d 126, 132 (6th Cir. 2014). The court does not, however, make credibility determinations, weigh the evidence, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat the motion, the nonmoving party must provide evidence, beyond the pleadings, upon which a reasonable jury could return a verdict in its favor. *Celotex Corp.*, 477 U.S. at 324; *Shreve,* 743 F.3d at 132. Ultimately, the court is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

B. The TILA Claim

Plaintiff alleges that Defendant has violated 15 U.S.C. § 1639g by failing to provide him with the requested payoff balance for his home loan. Section 1639g was added to the TILA in 2010 as part of the Dodd-Frank Act, s*ee* Pub. L. No. 111-203, 124 Stat. 1376 (2010), and provides as follows:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.

The regulation implementing this provision states:

> (c)(3) Payoff statements. In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as

applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time. A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement.

12 C.F.R. § 1026.36.

An individual may bring an action for a violation of Section 1639g under 15 U.S.C. § 1640, which provides that "any creditor" who fails to comply with the statute's requirements is liable for actual damages, statutory damages, costs and attorneys' fees, and other relief.

Plaintiff argues that Defendant violated Section 1639g by failing to respond to two requests for payoff information issued by Plaintiff's counsel: (1) the November 9, 2016 letter addressed to counsel for Defendant; and (2) the January 25, 2017 letter sent to Defendant at the Wilmington, Delaware address. (Doc. No. 21, at ¶¶ 13, 19). As described above, the two letters are virtually identical in describing the information sought: Under the heading "R.E.S.P.A. Qualified Written Request," the fourteenth item requests "[a]n itemized statement of the current amount needed to pay-off the loan in full." (Doc. Nos. 21-3, at 2; 21-6, at 2). Under the heading "Truth-In-Lending Act § 131(f)(2)," the letters request "the name, address and telephone number of the owner of the mortgage or the master servicer of the mortgage." (*Id.*, at 3).

Defendant argues that it did not violate TILA with regard to the November 9, 2016 request because the request was sent to Defendant's counsel, who is not a "creditor or servicer of a home loan." Because Plaintiff's counsel did not send the request to the "creditor," Defendant contends, Defendant did not violate a duty imposed on the creditor

by TILA for which damages may be recovered. In response, Plaintiff argues that Defendant has failed to cite authority for its position.

The Court concludes that the plain language of the statute supports Defendant's argument. Plaintiff seeks to recover damages under Sections 1639g and 1640, which impose a duty, and authorize a cause of action for damages for failure to fulfill that duty, only as to "creditors" or "servicers." *See* 15 U.S.C. § 1602(g) (defining "creditor"); 15 U.S.C. § 1602(cc)(7) and 12 U.S.C. § 2605(i)(2) (defining "servicer"). The statute does not contemplate recovery of damages by a party whose lawyer sends an unanswered request for information to a lawyer for another party in the midst of ongoing litigation. Therefore, Plaintiff's TILA claim based on the November 9, 2016 letter is without merit.

The January 25, 2017 letter was sent to Defendant directly, but Defendant indicated that it was unable to respond to the request until Plaintiff provided authorization for his counsel to receive the requested information. Defendant contends that its duty to respond was never triggered because Plaintiff refused to provide the requested authorization. As support for this position, Defendant cites an "Official Interpretation" by the agency charged with enforcing the TILA, the Consumer Financial Protection Bureau ("CFPB"), regarding third-party requests for payoff information:

Paragraph 36(c)(3).

1. *Person acting on behalf of the consumer.* For purposes of § 1026.36(c)(3), a person acting on behalf of the consumer may include the consumer's representative, such as an attorney representing the individual, a non-profit consumer counseling or similar organization, or a creditor with which the consumer is refinancing and which requires the payoff statement to complete the refinancing. *A creditor, assignee or servicer may take reasonable measures to verify the identity of any person acting on behalf of the consumer and to obtain the consumer's authorization to release information to any such person before the 'reasonable time' period begins to run.*

12 C.F.R. Part 1026, Supp. I, Subpart E, Paragraph 36(c)(3) (emphasis added).

Based on the Official Interpretation, therefore, a creditor or servicer may take reasonable measures to obtain a consumer's authorization to release information to third parties, including attorneys, and the response period does not begin to run until authorization is received. In this case, Plaintiff does not dispute that he failed to provide Defendant with an authorization to release his payoff information to his attorney. Rather, Plaintiff takes the position that authorization is not required. The Court is persuaded, however, that the interpretive commentary of the CFPB should be applied here because it strikes a reasonable balance between the desire for a prompt response to a consumer's request for payoff information and the need to avoid the unauthorized disclosure of a consumer's personal financial information. *See Rhinehimer v. U.S. Bancorp Investments, Inc.,* 787 F.3d 797, 809 (6th Cir. 2015) (discussing deference to be accorded to agency interpretations); *In re Carter*, 553 F.3d 979, 987 (6th Cir. 2009) (explaining that "the views of an agency charged with applying a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."); *He v. Ocwen Loan Servicing, LLC,* 2016 WL 3892405, at *2 (E.D.N.Y. July 14, 2016) (finding CFPB interpretative commentary to be highly persuasive because it fills a gap in the text of the statute and regulation). Therefore, the Court concludes that Defendant reasonably required an authorization to release Plaintiff's payoff information to counsel, and Plaintiff has failed to show that he provided such an authorization.[2] Accordingly, Defendant's duty to respond under Section

---

[2]  As the record establishes, this failure resulted from Plaintiff's counsel's refusal to provide the requested authorization form. While counsel may have opined that he was not required to do so, the issue before the Court is whether Defendant's request was reasonable. The Court finds that it was.

1639g was not triggered, and Plaintiff's TILA claim based on the January 25, 2017 letter is without merit. *See Pike v. Bank of America, N.A.,* 2016 WL 614013, at *8 (N.D. Ohio Feb. 16, 2016) (dismissing TILA claims where the plaintiffs failed to provide an authorization to defendant permitting release of information to consumer's attorneys).[3]

C. The RESPA Claim

In his briefing, Plaintiff seeks to raise claims under RESPA. Defendant argues that these claims should be barred because they were not raised in his Amended Complaint. (*See* Doc. No. 21 (Amended Verified Complaint); Doc. No. 45 (Initial Case Management Order, at ¶ 2)). The Court finds it unnecessary to resolve this dispute, however, because even if Plaintiff is permitted to raise a RESPA claim, he has failed to provide evidence, beyond the pleadings, upon which a reasonable jury could return a verdict in his favor on the claim under applicable law.

---

[3]  In addition, the Court notes that Section 1640 of the TILA bars recovery for violations where a defendant relied in good faith on an agency interpretation:

**(f) Good faith compliance with rule, regulation, or interpretation of Bureau or with interpretation or approval of duly authorized official or employee of Federal Reserve System**

No provision of this section, section 1607(b) of this title, section 1607(c) of this title, section 1607(e) of this title, or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Bureau or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Bureau to issue such interpretations or approvals under such procedures as the Bureau may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

Plaintiff claims that Defendant violated RESPA, specifically 12 U.S.C. § 2605(e), by failing to provide him with his loan payoff information in response to his counsel's requests for information. Section 2605(e)(1) requires that a "servicer of a federally related mortgage loan" respond to a "qualified written request"[4] from a borrower, or an agent of the borrower, within five business days. Within 30 business days after receipt of a qualified written request, the mortgage loan servicer must conduct an investigation, and provide the borrower with certain information. 12 U.S.C. § 2605(e)(2). A servicer that fails to comply with these obligations is liable to the borrower for "any actual damages to the borrower *as a result of the failure,*" any additional damages "in the case of a pattern or practice of noncompliance," and costs and attorneys' fees. 15 U.S.C. § 2605(f)(1), (3) (emphasis added).

The courts have consistently held that proof of actual damages is an essential element of a claim under RESPA. *See, e.g., Wirtz v. Specialized Loan Servicing, LLC,* 886 F.3d 713, 718 (8th Cir. 2018). "Congress's use of the phrase 'as a result of' dictates that 'there must be a "causal link" between the alleged violation and the damages.'" *Wirtz*, *supra* at 719 (quoting *Renfroe v. Nationstar Mortg., LLC,* 822 F.3d 1241, 1246 (11th Cir. 2016)). Conclusory allegations of actual damages are insufficient. *See, e.g., Pike,* 2016 WL 614013, at *6.

Plaintiff alleges that his actual damages consist of the cost of preparing the "qualified written requests" sent to Defendant, as well as the cost of filing and pursuing this lawsuit.

---

[4] Defendant also argues that the letters sent by Plaintiff's counsel were not "qualified written requests" for purposes of RESPA because they did not relate to the servicing of Plaintiff's loan, nor did they identify any error, as required by Section 2605(e)(1)(B). In addition, Defendant argues that Plaintiff's counsel failed to send the requests to the correct designated address. The Court need not address these arguments as Plaintiff's RESPA claim fails for other reasons, as set forth herein.

Plaintiff has failed to show, however, that these costs are compensable damages suffered by him "as a result of the failure" to promptly receive payoff information from Defendant.

Plaintiff cites *Marais v. Chase Home Finance, LLC,* 736 F.3d 711 (6th Cir. 2013) to support his argument that the cost of preparing a qualified written request can be an element of actual damages. In *Marais*, the court held that the plaintiff sufficiently pled actual damages to support her RESPA claim by alleging that the defendant's inadequate response to her qualified written request resulted in her paying interest on a higher principal balance than she should have. 736 F.3d at 720. Having made that determination, the court went on to allow the plaintiff to include the costs of preparing the qualified written response as an element of actual damages, and denied the defendant's motion to dismiss the RESPA claim. *Id.*, at 721.

Here the issue is not whether Plaintiff can withstand a motion to dismiss, but rather whether Plaintiff has come forward with evidence of actual damages sufficient to withstand summary judgment. *See Miller v. Caliber Home Loans, Inc.,* 2018 WL 935439, at *3 (W.D. Ky. Feb. 16, 2018) (discussing *Marais* as addressing the pleading requirements for a RESPA claim). Furthermore, the Court does not construe *Marais* as holding that the cost of preparing a qualified written request *alone* is sufficient to constitute actual damages under the statute. If that were the case, the causal connection requirement of the statute would be rendered superfluous. *See Martini v. JPMorgan Chase Bank, N.A.,* 634 F. App'x 159, 164 (6th Cir. 2015) (distinguishing *Marais* by explaining that the costs of preparing the request in that case became damages only after the defendant's failure to respond which resulted in higher interest costs and a negative impact on plaintiff's credit score).

The cost of preparing the requests in this case simply could not have been caused by Defendant's *subsequent* failure to respond to the requests because that cost would have been

incurred regardless of whether Defendant responded. *See Sutton v. CitiMortgage, Inc.*, 228 F.Supp.3d 254, 275-76 (S.D.N.Y. 2017) ("To permit a cause of action based on incidental costs would transform virtually all unsatisfactory borrower inquiries into RESPA lawsuits, and, in so doing, would subvert the very reason for the damages requirement in the first place."); *Tsakanikas v. JP Morgan Chase Bank, N.A.,* 2012 WL 6042836 (S.D. Ohio Dec. 4, 2012) ("The costs of preparing and sending a QWR to a loan servicer do not constitute actual damages under 12 U.S.C. § 2605.")

As for the costs associated with bringing this lawsuit, those costs are not considered elements of "actual damages" under subsection 2605(f)(1)(A) because they are specifically addressed in a separate subsection. *See* 12 U.S.C. § 2605(f)(3) (RESPA plaintiff may recover: "In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.")

Nor has Plaintiff demonstrated entitlement to statutory damages for "a pattern or practice of noncompliance" under subsection 2605(f)(1)(B). In order to recover statutory damages for a pattern or practice of noncompliance, a borrower must first recover actual damages. *Wirtz*, *supra,* at 6. Because Plaintiff has not shown that he suffered actual damages, he may not recover statutory damages. Furthermore, Plaintiff has not shown that Defendant has engaged in a pattern or practice of noncompliance within the meaning of the statute either with regard to Defendant's conduct with other borrowers, or with regard to Plaintiff's two requests at issue here. *Id.*

The property at issue in this case was the subject of a foreclosure sale in early 2014, and Plaintiff's request for payoff information came almost three years later. Plaintiff does not suggest that he had the financial means, at that time, to pay the balance of the loan and/or reverse the

12

foreclosure sale.[5] He has simply failed to show any damages he suffered during the seven-month period between his first request for payoff information and the receipt of that information. *See Adams v. EMC Mortgage Corp,* 549 F. App'x 718, 721 (10th Cir. Oct. 10, 2013) (plaintiff whose home had been foreclosed on failed to adequately allege actual damages in connection with his RESPA claim because he failed to explain how he was harmed by lack of a response to his request for information); *Pike*, 2016 WL 6144013, at *6 (plaintiff who had been in default and testified that his only damages were the cost of utilities and upkeep to the mortgaged property where he continued to reside failed to demonstrate actual damages, and thus, summary judgment on RESPA claim was appropriate); *Rider v. HSBC Mortgage Corp.,* 2013 WL 992510, at *6 (S.D. Ohio Mar. 13, 2013) (plaintiff failed to adequately claim actual damages in connection with RESPA claim where she failed to allege she was financially prepared to pay sums necessary to reinstate mortgage had the defendant adequately responded to her request for information). Plaintiff's RESPA claims are without merit.

## IV. Conclusion

For the reasons set forth above, the Court concludes that summary judgment should be granted to the Defendants.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Defendant has filed a copy of an email in which counsel for Plaintiff states that Plaintiff "has no money I am aware of so he probably is not overly worried about alleged deficiencies." (Doc. No. 56-14).